**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **HERBERT BROOKS** | **CIVIL ACTION NO. 1:24-CV-01063** |
| **VERSUS** | **JUDGE JERRY EDWARDS, JR.** |
| **LOWE'S HOME CENTERS, LLC** | **MAG. JUDGE JOSEPH H.L. PEREZ-MONTES** |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE**
**TO EXCLUDE INADMISSIBLE AND PREJUDICIAL EVIDENCE**

**INTRODUCTION**

Plaintiff, Herbert Brooks, respectfully submits this Memorandum in Support of his Omnibus Motions in Limine seeking to exclude five categories of inadmissible and unduly prejudicial evidence. The sole issue in this case is whether Lowe's Home Centers, LLC ("Lowe's") was negligent on April 20, 2024, and what damages resulted from that specific fall at its store. Yet the Defense has signaled—through its deposition questioning and motion practice—an intent to transform this straightforward premises liability trial into a wide-ranging character attack on Mr. Brooks and his counsel.

Through its depositions and motion practice, the Defense seeks to: (1) tell the jury that Mr. Brooks received $1.26 million from a prior lawsuit to suggest he has been "compensated enough"; (2) accuse Mr. Brooks of "destroying evidence" by following his doctor's recommendation to undergo medically necessary surgery; (3) introduce evidence of arrests that never resulted in convictions to paint Mr. Brooks as a criminal; (4) suggest that his medical treatment is illegitimate because his attorney helped him find doctors; and (5) blame Mr. Brooks' diabetes for his own injuries.

None of this evidence is relevant to whether a tripping hazard existed at Lowe's on April 20, 2024. All of it is designed to distract, confuse, and prejudice the jury against Mr. Brooks. The Federal Rules of Evidence exist precisely to prevent this kind of trial by innuendo, and Plaintiff respectfully requests that this Court enforce those protections.

I.   **EVIDENCE OF THE OUTCOME, VERDICT, OR SETTLEMENT OF PRIOR LITIGATION SHOULD BE EXCLUDED**

**A. Relevant Facts**

Mr. Brooks was involved in a prior legal matter arising from a 2017 accident that concluded with a trial and subsequent resolution in 2021. During depositions in the instant case, defense counsel has repeatedly referenced the specific financial outcome of that 2021 trial, specifically citing a verdict or settlement figure of approximately $1.26 million. (See Exhibit A-Deposition of Herbert Brooks, pp. 22-25, 137; and Exhibit B-Deposition of Dr. Joseph Turnipseed, pp. 46–47).

Plaintiff anticipates that Lowe's seeks to introduce this figure to the jury for the improper purpose of suggesting that Mr. Brooks has already been "compensated enough" for injuries he has sustained throughout his life, or to paint him as "litigious" or "legally savvy." Such arguments are legally improper and constitute nothing more than a thinly veiled attempt to invite the jury to decide this case based on improper considerations.

What a prior jury awarded Mr. Brooks for an entirely different injury caused by an entirely different defendant years earlier has absolutely no bearing on whether Lowe's was negligent on April 20, 2024, or what damages resulted from that fall.

**B. The Amount of a Prior Settlement or Verdict is Irrelevant Under FRE 401 and 402**

Evidence is relevant only if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The dollar amount Mr. Brooks

received in 2021 has absolutely no bearing on (1) whether a tripping hazard existed at Lowe's in 2024, (2) whether Lowe's breached its duty of care, or (3) what damages Mr. Brooks suffered as a result of the 2024 fall.

Courts consistently and uniformly hold that evidence of prior settlement or verdict amounts is irrelevant to the issues of liability and damages in a subsequent, unrelated accident. *See Tompkins v. Cyr,* 202 F.3d 770, 787 (5th Cir. 2000) (evidence must be relevant to a "consequential fact" in the case at bar); *Collins v. Wayne Corp.,* 621 F.2d 777, 784 (5th Cir. 1980) (excluding evidence that had no bearing on the specific issues before the jury).

Critically, while the medical fact that Mr. Brooks had a prior back injury may be relevant to causation analysis, the financial consequence of that prior injury—what a jury awarded him—is an entirely separate matter with no logical connection to Lowe's liability or Mr. Brooks' current damages.

**C. Any Probative Value is Substantially Outweighed by Unfair Prejudice Under FRE 403**

Even if the Court were to find the prior award marginally relevant—which Plaintiff respectfully submits it is not—it must be excluded under Rule 403 because "its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

The Fifth Circuit has emphasized that Rule 403 grants trial courts "wide discretion" to exclude evidence where the risk of prejudice outweighs probative value. *United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979). "Unfair prejudice" within the meaning of Rule 403 refers to evidence that has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States,* 519 U.S. 172, 180 (1997).

Here, the prior award presents precisely this danger:

1. Improper Wealth-Based Decision-Making. Introducing a substantial prior award of $1.26 million invites the jury to decide this case based on Mr. Brooks' perceived financial status rather than the facts of the 2024 accident. It encourages a decision based on whether the Plaintiff "needs" additional money, rather than what he is legally owed for a new and distinct injury. This is the very definition of deciding a case on an "improper basis."

2. Confusion of the Issues. Admitting the 2021 verdict amount would inevitably force Plaintiff to "retry" the 2021 case to explain why that award was justified, thereby distracting the jury from the facts of the 2024 Lowe's incident. The jury would hear testimony about a completely different accident, different injuries, and different defendants, all of which would muddle their understanding of the case before them.

3. Invitation to Punish a "Repeat Plaintiff." The defense's clear intent is to paint Mr. Brooks as litigious—someone who sues for a living. This constitutes improper character evidence under FRE 404(b) and invites the jury to punish him for exercising his legal rights in the past, rather than evaluating Lowe's conduct on April 20, 2024.

**D. The Evidence Violates the Spirit of the Collateral Source Rule**

The Collateral Source Rule is of "common law origin" and bars a tortfeasor from reducing their liability because the plaintiff received compensation from an independent source. *Bozeman v. State,* 879 So. 2d 692, 698 (La. 2004). While the rule is typically applied to insurance payments or employment benefits, its underlying rationale applies with equal force here: a defendant should not receive a windfall because the plaintiff was compensated by a different wrongdoer for a different wrong.

Lowe's is not entitled to a "credit" or reduction in damages because a different defendant paid Mr. Brooks for a different tort years prior. The 2021 award compensated Mr. Brooks for a 2017 injury; it has nothing to do with the shoulder, knee, and other injuries he suffered at Lowe's in 2024. Allowing the jury to hear the amount allowed by a separate jury for treatment unrelated to treatment at issue in the instant case serves no purpose other than to invite them to improperly offset or minimize damages for the injuries caused by Lowe's negligence.

**E. Evidence of Settlement Amounts is Excluded by Policy Under FRE 408**

Federal Rule of Evidence 408 reflects a strong policy favoring the exclusion of settlement-related evidence. While Rule 408 technically applies to settlements of the "claim" at issue in the litigation, its underlying policy rationale—that settlement evidence invites improper inferences and should be excluded—supports exclusion here as well. *See Bankcard America, Inc. v. Universal Bancard Systems, Inc.,* 203 F.3d 477, 484 (7th Cir. 2000) (recognizing that "the policy behind Rule 408 is to encourage settlements"). Courts routinely exclude evidence of prior settlements to prevent juries from drawing improper inferences.

## II. ARGUMENT OF SPOLIATION OR "DESTRUCTION OF EVIDENCE" REGARDING SURGICAL INTERVENTION SHOULD BE EXCLUDED

### A. Relevant Facts and Timeline

Defendant Lowe's has filed a Motion for Sanctions [Doc. 33], alleging that Mr. Brooks "destroyed evidence" by undergoing surgery on his injured shoulder and knee before Lowe's could conduct an Independent Medical Examination ("IME"). This argument is legally baseless, factually misleading, and constitutes an improper attempt to punish a plaintiff for seeking necessary medical care.

The undisputed facts demonstrate that Mr. Brooks did not "rush" to surgery or act to conceal evidence. Rather, he endured significant pain for over a year before electing to proceed with the operation to improve his quality of life:

1. **April 20, 2024**: Plaintiff was injured in a fall at Lowe's store, suffering injuries to his shoulder, knee, and other body parts.

2. **April 2024 through April 2025**: For nearly a full year, Plaintiff attempted conservative treatment, including physical therapy, injections, and medication management, all of which failed to resolve his pathology and provide adequate pain relief.

3. **August 8, 2024**: Defense counsel sent a letter requesting that Plaintiff "refrain from any surgical intervention" prior to a defense examination. [See Exhibit 39 to Exhibit A-Brooks

Deposition]. Notably, this letter was sent before the defense had even scheduled an IME, and no specific IME date was proposed.

4. **April 21, 2025**: Over eight months after Defense counsel's letter—and a full year after the injury—Plaintiff underwent the necessary surgery recommended by his board-certified treating orthopedist, Dr. Mark Field. [See Exhibit A-Brooks Deposition, Exhibit 41].

Mr. Brooks testified that he did not know about the defense's request and simply followed his doctor's orders to treat his ongoing pain. (See Exhibit A-Brooks Deposition, pp. 184–185). There is no evidence that surgery was scheduled to prevent an IME or to "destroy" evidence— because such evidence simply does not exist.

**B. Medical Surgery is Not "Spoliation" of Evidence Under Fifth Circuit Law**

Spoliation requires a finding of bad faith destruction of evidence relevant to pending litigation. The Fifth Circuit has established clear standards for when spoliation sanctions are appropriate, requiring proof that the party acted in bad faith—mere negligence is insufficient. *King v. Illinois Cent. R.R.,* 337 F.3d 550, 556 (5th Cir. 2003)*; Condrey v. SunTrust Bank of Ga.,* 431 F.3d 191, 203 (5th Cir. 2005)*; Guzman v. Jones,* 804 F.3d 707, 713 (5th Cir. 2015).

Critically, courts have consistently held that a plaintiff has a right to reasonable medical care and is not required to delay necessary surgical intervention solely to preserve their physical condition for a defendant's inspection. As one court aptly explained, the human body is fundamentally different from inanimate evidence: "Gilliam's body is fundamentally different from a vehicle or other inanimate piece of evidence… plaintiffs are free to determine when they should undergo medical treatment deemed necessary by their physicians." *Gilliam v. Uni Holdings, LLC,* 201 A.D.3d 83, 88–89 (1st Dep't 2021). The court emphasized that "a plaintiff's decision to undergo surgery does not constitute spoliation of evidence." Id.

The Eastern District of Louisiana reached a similar conclusion in *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, at *3 (E.D. La. June 12, 2000), holding that a plaintiff "did not have a duty to delay his surgery" to allow for a defense medical examination.

**C. The Bad Faith Standard Has Not Been—and Cannot Be—Met**

To instruct a jury on spoliation or to allow argument on the topic, the Defendant must prove that the Plaintiff acted in bad faith. The party seeking sanctions "must have acted in 'bad faith.'" *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). This is a high burden, and the Defendant cannot meet it.

There is absolutely no evidence that Mr. Brooks underwent surgery to deceive Lowe's or gain a litigation advantage. The record affirmatively demonstrates:

1. Medical Necessity. The surgery was performed by Dr. Mark Field, a board-certified orthopedic surgeon, based solely on his medical judgment that conservative treatment had failed and surgery was necessary to address Mr. Brooks' ongoing pain and functional limitations. Dr. Field's recommendation was based on objective medical criteria—not legal strategy.

2. Extensive Delay. Mr. Brooks waited over eight months after the defense letter—and a full year after his injury—before undergoing surgery. A party seeking to "destroy evidence" does not wait a year to do so.

3. Complete Preservation of Evidence. The so-called "evidence" of Mr. Brooks' pre-operative condition has been fully preserved through comprehensive medical documentation, including: pre-operative MRI imaging documenting the precise pathology; intra-operative photographs taken by the surgeon during the procedure; detailed operative reports describing exactly what was found and repaired; and pathology reports from any tissue analyzed.

Lowe's experts have ample documentary evidence to review and critique the necessity of the surgery. They can examine the MRIs. They can review the operative photographs. They can depose Dr. Field. They are not deprived of a defense; they are merely deprived of the opportunity to examine Mr. Brooks while he was still injured and in pain—a demand no court has ever required a plaintiff to satisfy.

**D. The Defense Never Scheduled an IME**

Critically, the Defense's August 8, 2024 letter demanding that Plaintiff "refrain from surgical intervention" did not schedule an IME. It did not propose a date. It did not identify an examining physician. It was nothing more than a blanket demand that Mr. Brooks remain injured and in pain indefinitely, awaiting an examination that Lowe's never bothered to arrange.

If Lowe's believed an IME was critical to its defense, it had eight months to schedule one. It failed to do so. Lowe's cannot now blame Mr. Brooks for its own inaction.

**E. Rule 403 Precludes Inflammatory "Spoliation" Argument**

Even if the Court were to deny the pending sanctions motion, allowing Defense counsel to argue "spoliation" or "destruction of evidence" to the jury would be highly prejudicial and must be excluded under Federal Rule of Evidence 403.

Such inflammatory language invites the jury to punish Mr. Brooks for seeking medical treatment—treatment that any reasonable person would pursue to escape chronic pain. It suggests that Mr. Brooks did something wrong by following his doctor's advice. The probative value of such an argument is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. See *Old Chief v. United States,* 519 U.S. 172, 180 (1997) (explaining that "unfair prejudice" means "an undue tendency to suggest decision on an improper basis").

III. **EVIDENCE REGARDING ARRESTS NOT RESULTING IN CONVICTION SHOULD BE EXCLUDED**

**A. Relevant Facts**

During Mr. Brooks' deposition, Defense counsel sought to impeach Plaintiff based on a semantic dispute regarding a discovery response about his criminal history. Specifically, Defense

counsel argued that Mr. Brooks' denial of "arrests" in Interrogatory No. 23 was somehow improper or dishonest due to the existence of records involving matters that did not result in criminal convictions.

**B. FRE 609 Permits Impeachment Only by Conviction**

Federal Rule of Evidence 609 establishes the exclusive means by which a witness may be impeached through evidence of criminal conduct. The Rule is explicit and unambiguous: impeachment is permitted only by evidence of a criminal conviction, not an arrest, charge, or investigation. Fed. R. Evid. 609(a).

The Supreme Court has long recognized the prejudicial impact of arrest evidence where no conviction exists. *Michelson v. United States*, 335 U.S. 469, 475–76 (1948). The underlying principle is fundamental: an arrest does not prove wrongdoing. In our legal system, individuals are presumed innocent, and an arrest that does not result in a conviction has no probative value regarding a person's character or credibility.

**C. The Evidence is Inadmissible and Highly Prejudicial**

Introducing evidence of an arrest or encounter with law enforcement that did not result in a conviction serves no legitimate purpose—it exists solely to smear the Plaintiff's character and suggest to the jury that he is a "bad person" whose testimony should be disbelieved and whose injuries should not be compensated.

Furthermore, Defense counsel's attempt to characterize a discovery dispute about the technical definition of "crime" versus "misdemeanor" as a "lie" is a transparent attempt to inject character evidence through the back door. Permitting this line of argument would require a mini-trial on wholly collateral issues—the precise definition of legal terms in discovery responses—that

will confuse the jury and distract them from the actual issues in this case: whether Lowe's was negligent and what damages Mr. Brooks suffered.

Under Rule 403, this evidence must be excluded because any minimal probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and waste of time. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

## IV.    EVIDENCE REGARDING ATTORNEY-REFERRAL TO PHYSICIANS SHOULD BE EXCLUDED

### A. Relevant Facts

Defense counsel intends to argue that Mr. Brooks' medical treatment is somehow "attorney-driven" or illegitimate by referencing the fact that Plaintiff's counsel referred him to treating physicians. During depositions, Defense counsel explored a "list of referrals" generated in entirely unrelated litigation and questioned both Plaintiff and his treating physicians about communications between counsel and medical providers.

Specifically, Defense counsel questioned Dr. Joseph Turnipseed about a referral list generated in the Fruge case—a different lawsuit involving a different plaintiff—asking: "Mike Thompson, that he had me in court, he had the judge grant him that I needed to make a list of referrals from attorneys … Dudley DeBosier was one of those?" Dr. Turnipseed responded: "It was one of them, yes, of course." (See Exhibit B-Deposition of Dr. Joseph Turnipseed, p. 50, l. 20 – p. 51, l. 2).

Defense counsel also confronted Mr. Brooks with Exhibit 65, an email from Plaintiff's counsel to Dr. Conn, and elicited testimony that Mr. Brooks asked his attorney for doctor recommendations. (See Exhibit A-Deposition of Herbert Brooks, p. 271, ll. 17–24).

### B. The Source of a Referral is Irrelevant to Medical Necessity

Whether a doctor was recommended by a friend, a primary care physician, the yellow pages, or an attorney does not alter the objective medical findings documented in MRIs, EMG studies, and physical examinations. It does not change the diagnosis. It does not make pathology appear on imaging that would otherwise show a healthy joint. The source of a referral has absolutely no bearing on whether the treatment was medically necessary.

Rule 403 requires exclusion of evidence where its probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. Fed. R. Evid. 403. The Supreme Court has addressed the proper scope of bias evidence, emphasizing that such evidence must demonstrate actual bias affecting the witness's testimony. *United States v. Abel,* 469 U.S. 45, 52 (1984).

Here, the Defense seeks to introduce "guilt by association" evidence—suggesting that because Plaintiff's counsel has referred clients to certain doctors in other cases, those doctors must be biased or their medical opinions unreliable. But absent specific evidence that the referral relationship actually affected the physician's medical judgment—evidence of financial impropriety, fabricated diagnoses, or medically unnecessary treatment—the mere fact of an attorney referral proves nothing.

## C. This is Collateral Character Evidence Designed to Prejudice

The Defense is attempting to use a referral "list" generated in a completely different case (Fruge) to imply some unspecified conspiracy or impropriety in this case. This is textbook "guilt by association"—the suggestion that because Plaintiff's counsel has referred clients to certain doctors in other cases, Mr. Brooks' injuries must somehow be fabricated or exaggerated.

This evidence is intended solely to prejudice the jury against Plaintiff's counsel and treating physicians without any foundational evidence of fraud, collusion, or impropriety. The Defense

cannot point to a single false diagnosis, a single fabricated medical record, or a single instance where any treating physician provided medically unnecessary treatment. Absent such evidence, the "attorney-referral" theory is nothing more than innuendo designed to distract the jury from the objective medical evidence documenting Mr. Brooks' injuries.

Under Rule 403, this evidence should be excluded because its potential for unfair prejudice and confusion substantially outweighs any conceivable probative value.

## V. ARGUMENT THAT DIABETES MANAGEMENT CONSTITUTES COMPARATIVE FAULT SHOULD BE EXCLUDED

### A. Relevant Facts

Medical records indicate that Mr. Brooks has struggled at times with blood sugar control related to his diabetes, which occasionally affected treatment timing or healing. Plaintiff anticipates that Defense counsel will attempt to argue that Mr. Brooks' difficulty in managing this chronic condition constitutes "comparative fault" or "failure to mitigate damages" that should reduce or eliminate Lowe's liability for the April 20, 2024 fall.

### B. The Eggshell Plaintiff Doctrine

The "Eggshell Plaintiff" doctrine—also known as the "thin skull" rule—is a bedrock principle of tort law holding that a tortfeasor takes the victim as they find them. It is a settled principle of tort law that when a defendant's wrongful act causes injury, the defendant is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim. The defendant takes the plaintiff as he finds him. *Maurer v. United States*, 668 F.2d 98, 99 (2d Cir. 1981).

The Fifth Circuit has consistently applied this doctrine. In *Koch v. United States*, 857 F.3d 267, 279 (5th Cir. 2017), the court reaffirmed that defendants are liable for all consequences of

their negligence, even when those consequences are more severe due to the plaintiff's pre-existing vulnerabilities.

Louisiana courts have likewise embraced this principle. *Lasha v. Olin Corp.,* 625 So. 2d 1002, 1006 (La. 1993) ("The tortfeasor takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.").

## C. Pre-existing Health Conditions Do Not Excuse Negligence

While the medical fact that Mr. Brooks has diabetes may be relevant to explain healing times, treatment choices, or the extent of damages, Lowe's should be absolutely precluded from arguing that his difficulty in managing a chronic illness constitutes "comparative fault" or negligence that reduces Lowe's liability for causing the fall in the first place.

This distinction is critical. Lowe's negligence in maintaining a safe premises caused Mr. Brooks to fall. His diabetes did not cause the fall. His diabetes did not create the tripping hazard. His diabetes did not breach any duty Lowe's owed to its customers.

The fact that Mr. Brooks—like millions of Americans—struggles to perfectly manage a chronic illness does not give Lowe's a "get out of jail free" card for its own negligence. A plaintiff's pre-existing health struggles never excuse a landowner's duty to maintain reasonably safe premises. To hold otherwise would create a perverse rule where tortfeasors could escape liability simply because they happened to injure someone with a pre-existing health condition.

Any argument that diabetes management constitutes "fault" should be excluded under Rules 401 and 403 as irrelevant, confusing, and unfairly prejudicial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court GRANT these Omnibus Motions in Limine and enter an Order prohibiting Defendant, its counsel, and its

witnesses from mentioning, referencing, soliciting testimony regarding, or introducing evidence or argument concerning:

(1) The financial outcome, verdict amount, or settlement funds received by Plaintiff in connection with his 2021 litigation or any other prior litigation;

(2) Any argument, testimony, or inference that Plaintiff's medically necessary surgical treatment constitutes spoliation, bad faith, destruction of evidence, or improper litigation conduct;

(3) Any arrest, charge, or encounter with law enforcement that did not result in a criminal conviction, including any argument that Plaintiff's discovery responses regarding criminal history were false or misleading;

(4) Attorney-referral relationships with treating physicians, referral lists generated in other litigation, or any suggestion that such referrals indicate improper, fraudulent, or "attorney-driven" medical treatment; and

(5) Any argument that Plaintiff's diabetes management constitutes comparative fault, failure to mitigate damages, or otherwise reduces Defendant's liability for causing the fall at issue.

Plaintiff further requests that the Court instruct Defense counsel to advise its witnesses of this Order prior to trial, and that any violation may result in a mistrial, contempt findings, or other sanctions as the Court deems appropriate.

Plaintiff further requests that the Court instruct Defense counsel to advise its witnesses of this Order prior to trial, and that any violation may result in a mistrial, contempt findings, or other sanctions as the Court deems appropriate.

*Signatures on the following page.*

Respectfully Submitted,

**DUDLEY DEBOSIER APLC**


_____/s/ W. Paul Wilkins_____
**W. PAUL WILKINS, No. 19830**
**ROSS M. LEBLANC, No. 33940**
1075 Government Street
Baton Rouge, Louisiana 70802
Telephone: (225) 379-3433
Email: pwilkins@dudleydebosier.com
         rleblanc@dudleydebosier.com
*Counsel for Plaintiff, Herbert Brooks*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Omnibus Motions in Limine and the accompanying Memorandum in Support have been served upon all counsel of record via the Court's CM/ECF system this 4th day of February 2025.


_____/s/ W. Paul Wilkins_____
**W. PAUL WILKINS**