UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| HEBERT BROOKS | * | CIVIL ACTION NO.: 1:24-cv-01063 |
| | * | |
| | * | JUDGE JERRY EDWARDS, JR. |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE |
| | * | JOSEPH H.L. PEREZ-MONTES |
| LOWES HOME CENTERS LLC | * | |

**DEFENDANT'S RESPONSE TO THE SHOW CAUSE ORDER**

**NOW TO COURT**, through undersigned counsel, comes Defendant, **LOWE'S HOME CENTERS, LLC**, who, respectfully files this response to this Honorable Court's Show Cause Order issued on April 7, 2026. After reviewing the Show Cause Order, Defendant did not believe a response was required on its behalf. However, after reviewing the submission by Mr. LeBlanc, Defendant believed it was necessary to alert this Honorable Court to what appears to be a systemic issue at Dudley DeBosier Injury Lawyers of citing hallucinated cases and misstating law, allegedly because of the use of Artificial Intelligence ("AI"). While not disclosed in Mr. LeBlanc's response to this Honorable Court's Show Cause Order, Dudley DeBosier recently began using an AI program – EVE – to draft pleadings. This fact was admitted in a letter sent by Mr. LeBlanc to Judge William Jorden in the 19th Judicial District Court in response to a Request for Sanctions filed in that court.[1] Additionally, undersigned counsel reviewed recent pleadings filed by Dudley DeBosier in cases in which he is the attorney of record. In all three cases, there were misstatements of law and/or hallucinated quotes. While Mr. LeBlanc and Mr. Wilkins are responsible, as Officers of the Court, for the pleadings filed in this case, Rule 11(C)(1) allows this Court to expand the Show Cause Order to Dudley DeBosier, as this is clearly a firm wide issue.

---

[1] See Exhibit A, Letter from Ross LeBlanc to Judge William Jorden.

## I.    Historical Context

The U.S. Fifth Circuit, in *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 233 (5th Cir. 2026), provided a detailed historical background of the use of AI in the legal field:

> The first high-profile incident of AI-fabricated case citations in the federal courts occurred in the Southern District of New York. In that case, the plaintiff's AI-generated brief cited seven nonexistent cases… Fabrications of this sort have been dubbed "hallucinations." The hallucination problem has no end in sight, as AI's tendency to fabricate results arises from the training and structures of AI programs. As time goes on, these hallucinations grow "all the more insidious and harder to guard against," as the models are more sophisticated and appear more truthful. This problem now often manifests as false quotes or statements of law attributed to real cases, rather than the more easily recognizable fake cases.
>
> ...
>
> Regrettably, despite numerous news stories, CLE presentations, scholarly articles, and judicial entreaties, AI-hallucinated case citations have increasingly become an even greater problem in our courts, and the problem shows no sign of abating. Damien Charlotin, a French lawyer and data scientist, maintains a database that tracks court orders related to AI-hallucinated content. As of the date of this order, Charlotin has identified 239 cases of hallucination by lawyers in the United States.
>
> …
>
> It is a problem that is getting worse—not better. If it were ever an excuse to plead ignorance of the risks of using generative AI to draft a brief without verifying its output, it is certainly no longer so. To ethically use generative AI in the practice of law—which we do not dispute can be helpful if done properly and carefully—a lawyer must "ensure that the legal propositions and authority generated are trustworthy." Failure to do so "abdicate[s] one's duty, waste[s] legal resources, and lower[s] the public's respect for the legal profession and judicial proceedings."

*Internal citations omitted.*

Courts throughout the country are attempting to combat this ever-growing problem with the use of Rule 11. As this Honorable Court is aware, Rule 11 requires that at least one attorney of record sign every pleading, written motion, and other paper filed with a federal court. Fed. R. Civ. P. 11. Further, Rule 11 explains what an attorney represents to the court when he signs a filing and

2

provides for sanctions when a party violates the rule. *Id*. In relevant part, Rule 11(b) reads as follows:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * *
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law....

Fed. R. Civ. P. 11(b).

The affirmative duties imposed by Rule 11 apply to all pleadings, written motions, and other papers submitted to a court. *Gentry v. Thompson*, No. CV 25-1260, 2026 WL 787563, at *2 (E.D. La. Mar. 20, 2026). Thus, when a litigant files a pleading or motion, he certifies that he has conducted a reasonable inquiry into both the facts and the law contained in the filing, and that to the best of his knowledge, information, and belief, the pleading, written motion, or other paper has adequate legal and factual support. *Id*.

Since 2023, courts have been plagued with AI hallucinations, and while sanctions pursuant to Rule 11 have been imposed and efforts have been made to educate the bar concerning the issues, as the Court in *Fletcher* noted, the problem is only getting worse. Examples of a few of these cases where sanctions were awarded are outlined below:

In *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231 (5th Cir. 2026), the U.S. Fifth Circuit sanctioned the offending attorney and ordered her to pay a monetary sanction.

In *Gentry v. Thompson*, No. CV 25-1260, 2026 WL 787563 (E.D. La. Mar. 20, 2026), the defendants filed a Rule 12(b)(6) Motion to Dismiss that contained nine nonexistent case citations.

3

The Court sanctioned the associate attorney that drafted the Motion, as well as his supervising attorney, ordering both to pay monetary sanctions.

In *Kattom v. Bondi*, No. CV 25-1497 SEC P, 2026 WL 637419 (W.D. La. Mar. 6, 2026), the attorney cited several incorrect quotations and to cases that did not exist. Despite the Court commending the attorney for his candor, honesty, and the remedial measures[2] he had undertaken since the filing of the underlying Motion, this Honorable Court still ordered the attorney to pay monetary sanctions in accordance with Rule 11.

In *Lee v. R&R Home Care, Inc*. No. CV 24-836, 2025 WL 2481375 (E.D. La. Aug. 28, 2025), the plaintiff's attorney argued that the submission of a fabricated case and quotation was less harmful when the underlying legal contentions were otherwise accurate. The easter District of Louisiana stated that submission of any false authority undermines the Court's confidence in counsel's work and forces the court to expend significant resources addressing the misconduct. Similar to *Kattom*, the court commended the candor of the attorney and his efforts to educate himself on ethical AI use but nevertheless imposed a monetary sanction.

In *In re Kenney*, 25-389 (La. App. 5 Cir. 10/23/25), 422 So. 3d 905, 927, the Louisiana Fifth Circuit, in affirming a sanctions award pursuant to La. C.C.P. art. 863, outlined the issue succinctly:

> While the technology utilized by lawyers has changed, our obligations as officers of the court to the bench, the bar, clients, and the public remain the same. In a letter regarding the emergence of generative artificial intelligence to the Louisiana State Bar Association, the justices of the Louisiana Supreme Court have stated:
>
>> As with any developing technology, AI appears to present both opportunities and concerns, and the use of such technology raises a host of possible issues from an ethics and professionalism standpoint. Although many applications of AI technology in the legal profession are new, the

---

[2] The Court noted that the remedial measures, included enrolling in CLEs on AI-assisted legal practice, review of governing ethical guidance, and developing strengthened verification protocols to ensure that all authorities are independently confirmed before filing.

> rules governing the bench and the Bar are not new and have been in place for decades. At the present time, the ethical and professional rules governing the bench and the Bar are robust and broad enough to cover the landscape of issues presented by AI in its current forms.
>
> Regardless of the use of AI, attorneys practicing in Louisiana have always been ultimately responsible for their work-product and the pleadings they file in court, maintaining competence in technology, and protecting confidential client information and have a duty to avoid making misrepresentations of fact or law. See, e.g., Rules of Professional Conduct 1.1, 1.3, 1.4, 1.6, 1.15, 3.1, 3.3, and 5.3; Louisiana Code of Civil Procedure articles 371 and 863. These obligations remain unchanged or unaffected by the availability of AI.

The lawyer's obligation under Article 863 is crystal clear: read the law you cite. Read the Code. Read the statutes. Read the cases. Citation to fake or fabricated cases in pleadings is prima facie evidence that the attorney who signs the pleadings has failed her duty under Article 863. This is a responsibility that cannot be outsourced. Those who utilize generative AI programs, such as ChatGPT, for legal research and drafting legal documents should be aware of the problem of fake cases. There is no reason fake citations, be they generated by AI programs or by humans, should appear in any pleading filed in a Louisiana court. This is an easily preventable problem, and all attorneys practicing in Louisiana have access to resources to easily verify the law they employ to support their arguments.

## II.    Sanctions Against Repeat Offenders

In *Billups v. Louisville Mun. Sch. Dist.*, No. 1:24-CV-74-SA-RP, 2025 WL 3691871 (N.D. Miss. Dec. 19, 2025), the Northern District of Mississippi noticed that a Response Memorandum filed by the plaintiff contained a hallucinated case cite and misrepresented three other holdings. The court issued an Order to Show Cause why sanctions pursuant to Rule 11 should not be imposed. During the court's investigation into this issue, it discovered that this was not the first instance where the associate attorney at issue had been caught using AI resulting in hallucinations or misstatements of law. Three months prior to the Response Memorandum at issue, opposing counsel in an unrelated case had notified the associate attorney and her superiors of discrepancies in a brief, and it was confirmed that the associate attorney used AI when drafting the brief. She was given an opportunity to fix the issue without consequence, and instead of learning from her

5

mistake, she continued the same practice of not verifying AI output. Three months later, she filed the pleading at issue.

The court, in sanctioning the associate attorney, relied on the advisory committee's note to the 1993 amendment of Rule 11, indicating that courts should consider whether the subject conduct was part of a pattern of activity. The court did not stop at sanctioning the associate attorney, but extended the sanctions to the supervising attorneys and the law firm. The court relied on Rule 11(c)(1) which provides that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."

Ultimately, in *Billups*, the court (1) disqualified the attorneys from further representation of the plaintiff in that case; (2) required all members of the firm to provide a copy of the Sanctions Order to all presiding judges in every pending state or federal case in which they are counsel of record; (3) the associate attorney that drafted the Response Memorandum was forced to withdraw from any case pending before that judge and was prohibited from appearing in that court for a period of two (2) years; and (4) the firm was required to conduct an internal audit of all substantive filings involving the associate attorney, and the firm was required to provide to the court an audit containing a list of the cases where the associate attorney is a signatory on any filing, any fictious case citations and/or misrepresentations of case holdings in any filing, and the corrective action taken in each case.

Considering the court's analysis in *Billups*, Rule 11(C)(1), the guidance from Rule 11's advisory committee note concerning past conduct, and Mr. LeBlanc's response to the Show Cause Order, Defendant believed it necessary to file this Response. What the court may not be aware of, because it was not addressed in Mr. LeBlanc's letter to the court, this is not the first time Dudley

DeBosier or Mr. LeBlanc has had an issue with improper use of AI, misstatements of law, and improper citations as a result of the use of AI.

In *Ronnie Rushing, Jr. v. Turner Industries Group, LLC, et al*, 19th Judicial District Court, C-742-404, Mr. LeBlanc filed a Memorandum in Support to a Motion to Compel that contained a misstatement of law.[3] In that Motion, Mr. LeBlanc attributed the following quote to *Riggio v. Ports Am. Louisiana, L.L.C.*, 2023-0294 (La. App. 4 Cir. 11/13/23), 377 So. 3d 418: "evidence of the financial relationship between an expert witness and the party who engaged the expert is always admissible to show bias." As the defendants in *Rushing* pointed out to the court, this quote does not exist in *Riggio*.[4] Furthermore, the defendants pointed out that Mr. LeBlanc misrepresented the holding of *Riggio* arguing that it supported his position, when it did not.[5] Of note, Mr. LeBlanc, in opposing the defendants' Motion to Compel, actually cited to the correct holding *Riggio* to support his position.[6] This issue was raised to the court, and Mr. LeBlanc withdrew the Motions in order to avoid sanctions and submitted a letter to the court. The letter claims that Mr. LeBlanc would review his recent filings in that case, as well as his other cases to look for these AI hallucinations.[7] He also claimed that he would circulate the letter to his entire firm.[8] Despite this statement to the Court, the defendants' counsel in *Rushing* continued to flag misstatements of law for the court that were contained in Mr. LeBlanc's pleadings, none of which were withdrawn or corrected by Mr. LeBlanc.[9]

---

[3] See Exhibit B-1, *Rushing v. Turner*, Memorandum in Support of Motion to Compel Complete Response to Subpoena Duces Tecum to Southern Brain & Spine for Expert's Financial Records.
[4] See Exhibit B-2, *Rushing v. Turner*, Request for Sanctions and Incorporated Opposition to Motion to Compel Response to SDT for Southern Brain and Spine's Financial Records.
[5] *Id.*
[6] *Id.*
[7] See Exhibit A.
[8] See Exhibit A.
[9] See Exhibit C, *Rushing v. Turner*, Various Motion Practice, *in globo*.

Defendant notes that Mr. LeBlanc's letter to Judge William Jordan is not on Dudley DeBosier letterhead, and there is almost no mention of the firm in the letter. And while Mr. Wilkins and Mr. LeBlanc, as Officers of the Court, are responsible for the statements that they make in pleadings, specifically the legal statements, this issue is not solely with Mr. Wilkins and Mr. LeBlanc. Undersigned counsel has learned from a review of his own files that this is a systemic Dudley DeBosier problem. As you can see from the following examples, Dudley DeBosier has an unchecked habit of misstating law, misquoting, and misleading multiple courts in Louisiana.

**Connie Hawco v. Ardendale Oaks Apartments, LLC and ABC Insurance Company**
**19th Judicial District Court – C-750,941**

In *Hawco*, on February 5, 2026, Dudley DeBosier filed a Memorandum in Opposition to Motion for Summary Judgment that is littered with AI hallucinations and misstatements of law.[10] Defendant highlights the various issues in the order in which they appear in the brief. The first issue arises when Dudley DeBosier provided the court with the following paragraph:

> Each party is entitled to a fair opportunity to facilitate discovery and present their claims. *Elledge v. Becnel*, 22-491, p. 5 (La. App. 1 Cir. 11/4/22), 354 So.3d 688, 692. Fairness in a deposition exists when counsel cooperates, is courteous, and states objections concisely in a nonargumentative and non-suggestive fashion. La. Code Civ. Proc. art. 1443(B). These core principles are essential to conducting adequate discovery to formulate the basis of Plaintiff's claim. *Trichell v. McClure*, 21-1240, p. 8 (La. App. 1 Cir. 4/8/22), 341 So.3d 856. However, Defendant's counsel exhibited poor sportsmanship that led to more questions than answers.

Defendant notes that "fairness" is not mentioned at all in La. C.C.P. art. 1443(B). But more importantly, the legal argument credited to *Trichell v. McClure*, is not contained in that opinion. Later in that pleading, Dudley DeBosier stated: "Reasonably, a corporate representative should know the basic roles and obligations of the company they represent without relaying an opinion, and it is not uncommon to discuss matters such as "relevant safety policies" with a company

---

[10] See Exhibit D, *Hawco v. Ardendale Oaks Apartments, LLC*, Memorandum in Opposition to Motion for Summary Judgment.

deponent. *Liberty Mutual Fire Insurance Company v. Harris*, 22-429, p. 8 (La. App. 1 Cir. 11/4/22), 355 So.3d 628, 636." The case cited did involve the discussion at a deposition of "relevant safety policies," but does not speak to this being a common occurrence. The case also does not discuss what a corporate representative should know, and whether they should be able to state this information without relaying an opinion.

Next, Dudley DeBosier returned to *Trichell* citing it, along with *Kopnicky v. Citgo Petroleum Corp.* in the following paragraph:

> The condition of the stairwell on the apartment complex premises forms a material portion of Plaintiffs claim against Ardendale Oaks, thus answers to this inquiry are necessary to adequately conduct discovery in this case. *Trichell*, 341 So.3d 856. Plaintiffs questioning does not require expertise in weep holes to provide an answer on behalf of Ardendale Oaks. An examination regarding the integrity of essential structures on the premises falls within the well of information a corporate agent should have to be considered available and knowledgeable. *See Kopnicky v. Citgo Petroleum Corp.*, 07-1483, p. 12 (La. App. 3 Cir. 1/3/08), 215 So.3d 746, 755.

As with the previous cite to *Trichell*, this case does not discuss stairs or material portions of claims related to adequate discovery. As for *Kopnicky*, the case does discuss 1442 depositions, but there is no discussion related to the integrity of essential structures on the premise.

Later in the Memorandum, Dudley DeBosier uses this quote from *Ambrose v. McLaney*, 959 So.2d 529 (La. App. 4 Cir. 2007): "When a property owner leaves its tenant no way to enter or leave the property except for defective stairs, the tenant is not negligent if the tenant falls on the stairs." *Id.* at 537." However, the actual quote is: "The jurisprudence holds that when, as here, a property owner leaves its tenant no way to enter or leave the property except for defective stairs, the tenant is not negligent if the tenant falls on the stairs."

Next, Dudley DeBosier cited to *Cross v. Timber Trails* in the following paragraph:

> Furthermore, in *Cross v. Timber Trails Apartments*, 899 So.2d 853 (La. App. 3 Cir. 2005), a second-floor tenant fell on icy exterior stairs due to inadequate lighting. The landlord argued the tenant should bear comparative fault because he was

9

familiar with the lighting problems and had previously used the stairs in the dark. The Louisiana Third Circuit rejected this defense and affirmed a finding of 100% liability against the landlord, emphasizing the tenant had "no other means of access to [his] apartment." *Id.* at 856.

The quote attributed to *Cross* in the final sentence does not exist. More importantly, the Third Circuit did not discuss whether the tenant had any other means of access to his apartment, much less give it any emphasis. Throughout the entire Memorandum, Dudley DeBosier relies on *Cross* for this premise, despite the fact that there is no discussion in the case concerning whether the stairs at issue were the sole means of accessing the apartment.

Following the completely hallucinated quote attributed to *Cross*, Dudley DeBosier goes to make this argument:

> The Louisiana Fourth Circuit in *Ambrose* explicitly rejected the argument Defendant advances here—that a tenant's familiarity with a defective condition should result in comparative fault when the stairs are her only option. The *Ambrose* court held that because "the stairs were Ms. Ambrose's sole means of access to her upstairs unit," the trial court's "failure to allocate any fault to Ms. Ambrose was [not] manifestly erroneous." 959 So.2d at 537-38.

Dudley DeBosier attempts to quote the ultimate holding in *Ambrose*, while stating that the Court explicitly rejected the argument that familiarity with a defective condition could result in comparative fault. However, the Court did not reject that argument. In fact, when reviewing the full version of the quote, not the truncated version used by Dudley DeBosier, that fact is clear: "Although we might have allocated some fault to Ms. Ambrose given her familiarity with the condition of the stairs, we cannot say the trial court's failure to allocate any fault to Ms. Ambrose was manifestly erroneous." *Ambrose v. McLaney*, 2006-1181 (La. App. 4 Cir. 5/16/07), 959 So. 2d 529, 537.

Next, Dudley DeBosier provides the argument below, citing *Hails*:

> Defendant's frivolous objections created a large gap in the information necessary to move this case forward, leading to a myriad of genuine issues of material facts.

10

While it is undisputed that Plaintiff sustained injuries at Ardendale Oaks on January 17, 2024, factual questions remain regarding the formation of the defect that caused her injuries, the impact of the freeze on the defect, and Defendant's inaction or disregard for the defect. Such disputes of fact preclude summary judgment. *Hails v. Sun Oil Co.*, 94-1171, p. 5 (La. App. 1 Cir. 4/7/95), 653 So.2d 851, 853.

Based on the paragraph and sentences proceeding *Hails*, it would be reasonable to believe that *Hails* delt with factual questions concerning the formation of defects, the impact of a hard freeze on defects, or some other issue related to a slip and fall. Or at a minimum, it dealt with objections during a 1442 deposition. *Hails*, however, is a summary judgment case related to whether a contract was a maritime contract or non-maritime contract.

Dudley DeBosier also provides the argument below citing *King*:

Nevertheless, Ardendale Oaks' failure to mitigate the accumulation of ice created by the configuration of the roofline and the stairwell is the center of this dispute. Not only did this defect exist at the time of Plaintiff s accident, but it also caused the damages she incurred by relying on her sole means of egress and ingress from the second floor of her apartment building. *See King v. Allen Court Apartments II*, 15-858, p. 7 (La. App. 1 Cir. 12/23/15), 185 So.3d 835, 840. Thus, this defect brings liability against Ardendale Oaks under Louisiana Civil Code Articles 2696 and 2317.1

*King* does not discuss the sole means of egress or ingress from a second-floor apartment building, nor does it deal with ice, stairwells, or rooflines.

Next, Dudley DeBosier provides the following statement of law:

The unreasonableness of the risk posed by unaccounted water falling from the roof onto the stairwell is wed to the unique facts and circumstances of this case, and the utility of the stairs requires they be safely constructed and maintained to escape liability. *Lowenburg v. Sewerage & Water Board of New Orleans*, 19-524, p. 18 (La. App. 4 Cir. 7/29/20), 387 So.3d 548, 565.

*Lowenburg* does not deal with water falling from roofs, stairwells, stairs, or requirements to safely construct and maintain stairs to escape liability. In fact, not only is *Lowenburg* not a summary judgment case, it isn't even a slip and fall case.

11

Next, Dudley DeBosier stated: "In *Sepulvado v. Travelers Insurance - Charter Oak Fire Insurance Company*, 52,41 5 (La. App. 2 Cir. 11/8/18), 261 So.3d 980, 984, Louisiana's Second Circuit acknowledged that "ice may not always be an open and obvious hazard in Louisiana," especially if ice is caused by water falling from a building rather than precipitation." While the internal quotation is accurate, there is no discussion in *Sepulvado* concerning the difference between ice caused by water falling from a building rather than precipitation.

Dudley DeBosier also provided the following legal argument:

The third inquiry in the risk-utility analysis is the feasibility and cost of prevention of the harm. Despite Defendant's contention, Ardendale Oaks would have incurred a very low cost for preventing Plaintiffs harm, and prevention would have been easily feasible under the circumstances. Defendant argues that "ice-proofing" the premises would place an unreasonable burden on Ardendale Oaks given the short-length of the winter event, yet the potential for harm in any weather-related event should warrant additional measures for custodians of apartment complexes. Regardless of Defendant's willful ignorance, it is general knowledge that the temperatures in Louisiana sometimes fall below freezing in the winter months, and simple, frugal measures exist to avoid harm when this occurs. *McKinnie v, Department of Transp. And Development*, 426 So.2d 344, 350 (La. App. 2 Cir. 1983).

Defendant reviewed *McKinnie*, and there is no discussion of simple, frugal measures to avoid harm when temperatures fall below freezing. However, this case actually holds that the Department of Transportation and Development was not liable even though they had knowledge that there are sometimes freezing temperatures in Louisiana, the exact opposition of the proposition asserted in Dudley DeBosier's Memorandum.

Finally, Dudley DeBosier states: "Defendant mischaracterizes Plaintiffs purpose for trying to descend the stairs as an excursion outside in severe weather conditions, but Louisiana courts consider any task related to employment to have some social utility. *See Mendoza v. ACE Property and Casualty Insurance Company*, 24-604 (La. App. 4 Cir. 5/27/25), 414 So.3d 1172." While there is a discussion of the plaintiff's actions being employment related and having social utility in

*Mendoza*, there is far from a far-reaching statement that 'Louisiana courts consider any task related to employment to have some social utility.'

In opposing the Motion for Summary Judgment, Dudley DeBosier also filed a Memorandum in Support of Motion to continue Hearing on Defendant's Motion for Summary Judgment.[11] In that pleading, Dudley DeBosier made the following argument:

> Courts have recognized that summary judgment is premature when essential discovery remains incomplete. See Elledge v. Becnel, 22-491 (La. App. 1 Cir. 11/4/22), 354 So.3d 688, 692 (recognizing each party's entitlement to fair opportunity to facilitate discovery).

In reviewing *Elledge*, the First Circuit actually stated the exact opposite: "The requirement that a summary judgment should be considered only after "adequate discovery" has been construed to mean that there is no absolute right to delay action on a motion for summary judgment until discovery is complete." *Elledge v. Becnel*, 2022-0491 (La. App. 1 Cir. 11/4/22), 354 So. 3d 688, 692. The court in *Elledge* ultimately granted the defendant's Motion for Summary Judgment over the plaintiff's objection that additional discovery was needed. *Id.*

## Michael Woodard v. Robert Allen Schweigart, et al
## 1st Judicial District Court – C-650,071

In *Woodard*, Dudley DeBosier filed Supplemental Memorandum in Support of Motion to Compel[12] which contained the following paragraph:

> Additionally, a party's determination regarding causation or fault is also discoverable. Accident reports and causation determinations are generally not prepared in anticipation of litigation and are generally discoverable. See Simmons v. Transit Mgmt. of Se. Louisiana, Inc., 2000-2530 (La.App. 4 Cir. 2/7/01); 780 So.2d 1074, writ denied, 2001-0421 (La. 2/16/01); 786 So.2d 106. Therefore, questions about these reports and their objectives are also discoverable, i.e., appropriate to ask and required to be answered.

---

[11] See Exhibit E, *Hawco v. Ardendale Oaks Apartments, LLC*, Memorandum in Support of Motion to Continue Hearing on Defendant's Motion for Summar Judgment.
[12] See Exhibit F, *Woodard v. Schweigart*, Supplemental Memorandum in Support of Motion to Compel.

13

In response, the defendants noted for the Court and Dudley DeBosier that *Simmons* does not stand for the proposition that accident reports and causation determinations are *generally discoverable*.[13]

To date, Dudley DeBosier has not corrected this misstatement of law.

### Clarence Tremont v. Port Allen Ventures, LLC, et al 18th Judicial District Court, C -1048739

In Dudley Debosier's Opposition to Defendants' Motion for Summary Judgment[14], Dudley DeBosier stated the following:

> Other Louisiana courts have confirmed this analysis. For example, a wheeled chair in a hospital waiting room "had some social utility, since [the] hospital kept [the] chair in its waiting area in order for visitors and patients to sit while they waited." *Williams v. Touro Infirmary*, 382 So. 3d 345 (La. App. 4th Cir. 2023).

While this appears to be an accurate representation of the findings in *Williams*, this quote does not exist in the case.

If this was a single occurrence, it might be considered an accident. An oversight. A momentary lapse in judgment. The above excerpts from *Brooks*, *Rushing*, *Hawco*, *Tremont*, and *Woodard* display that this is a pattern of conduct, and that it is not limited to Mr. LeBlanc and/or Mr. Wilkins. This is a Dudley DeBosier issue. **And what is concerning is that of the 5 cases cited above, 4 are being directly handled by undersigned counsel. Because this review is only based on a small subset of cases being handled by Dudley Debosier, there is no way to know how truly pervasive this practice actually is at Dudley DeBosier.**

---

[13] See Exhibit G, *Woodard v. Schweigart*, Memorandum in Support of Motion to Vacate and/or Nullify Judgment.
[14] See Exhibit H, *Tremont v. Port Allen Ventures*, Opposition to Defendants' Motion for Summary Judgment.

## IV.    Conclusion

Considering the rampant use of AI by Dudley DeBosier Injury Lawyers, a firm that has already had this issue raised to multiple courts, the court's analysis in *Billups*, Rule 11(C)(1), and the guidance from Rule 11's advisory committee note concerning past conduct, this Court has the authority to expand the Show Cause Order beyond Mr. Wilkins and Mr. LeBlanc to Dudley DeBoser Injury Lawyers in an effort to cure a systemic problem within the firm.

Respectfully Submitted,

**TAYLOR, WELLONS, POLITZ & DUHE, LLC**

By:    */s/ Doran L. Drummond*
D. Scott Rainwater (Bar Roll No. 30683)
Doran L. Drummond (Bar Roll No. 35758)
Michael M. Thompson (Bar Roll No. 30758)
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana 70809
Telephone: (225) 387-9888
Fax: (225) 387-9886
Email: srainwater@twpdlaw.com
        mthompson@twpdlaw.com
        ddrummond@twpdlaw.com
***Counsel for Lowe's Home Centers, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed with the Clerk of Court of the United States District Court for the Western District of Louisiana by using the CM/ECF System. I further certify that I mailed the forgoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM/ECF System on this 13th day of April 2026.

*/s/ Doran L. Drummond*
TAYLOR, WELLONS, POLITZ & DUHE, LLC

15