**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **HERBERT BROOKS** | **CIVIL ACTION NO. 1:24-CV-01063** |
| **VERSUS** | **JUDGE JERRY EDWARDS, JR.** |
| **LOWE'S HOME CENTERS, LLC** | **MAG. JUDGE JOSEPH H.L. PEREZ-MONTES** |

### RESPONSE OF W. PAUL WILKINS TO ORDER TO SHOW CAUSE

NOW INTO COURT comes W. Paul Wilkins, responding individually to this Court's Order (ECF No. 58) directing undersigned counsel to show cause why he should not be sanctioned under Federal Rule of Civil Procedure 11 for misquoting precedent in Plaintiff's Memorandum in Support of Omnibus Motions in Limine (ECF No. 49-1). Undersigned counsel responds as follows.

### I. ACCEPTANCE OF RESPONSIBILITY

At the outset, I accept full and personal responsibility for every citation error identified by this Court. The Memorandum in Support bears my signature. I had a duty to ensure that every case cited in that document was accurately quoted and properly represented, which I did not do. I do not minimize or excuse that failure.

Co-counsel Ross M. LeBlanc did not draft, review, or verify the citations in the Memorandum. His name appears on the Omnibus Motion (ECF No. 49-1) as co-counsel of record, but the Memorandum in Support was entirely my work product. Mr. LeBlanc has filed a separate declaration to that effect, which I confirm is accurate.

### II. WHAT HAPPENED

I owe this Court a candid and complete explanation of how these errors occurred.

**A. Use of Artificial Intelligence in Drafting**

I used an artificial intelligence tool to assist in the original drafting of the Memorandum in Support. Specifically, I used the AI platform Claude to help generate legal arguments, identify supporting case law, and draft portions of the brief. Have extensive experience in using AI across many use cases, I am aware of the risks of hallucination and simulation. Because of that, I undertook to verify any AI-generated content that would be included in the final product through multiple steps, as described below. Those verification efforts proved inadequate, and the errors this Court identified are the direct result of that inadequacy.

I disclose this not to shift blame to a machine or any person other than myself, as signatory to the document. The responsibility is mine alone. But it is important to me that this Court understand how misquoted language came to appear in a filing that bears my signature, and candor requires this disclosure.

**B. The Verification Steps I Took — and Where They Failed**

The drafting process proceeded as follows:[1]

**1. Initial Draft.** On or about February 1–2, 2026, I used AI assistance to generate an initial draft of the consolidated Memorandum in Support. That draft contained the legal arguments I intended to make, supported by case citations generated by the AI research.

**2. Request for Cite-Checking.** On February 2, 2026, I forwarded the draft document to the firm's trial paralegal with the following request:

> . . . can you get one of the law clerks to check the cases cited in this memo to make sure (1) they exist, and (b) my representation of the holdings of the cases is accurate.

**3. Law Clerk Review.** On February 3, 2026, I was provided with a legal memorandum prepared by one of the firm's law clerks. The law clerk identified numerous problems with the

---

[1] Since the communications and version sequence contain attorney work product, I will not attach the documents referred to herein as exhibits to this open filing but stand ready to produce any document the Court requests for in camera inspection.

citations—including inaccurate quotations, wrong case citations, and holdings inconsistent with the content of the draft pleading.

**4. Attempted AI Correction.** On February 4, 2026—the filing deadline—I returned to Claude, where the document was stored, to correct the problems identified by the law clerk. Frankly, I did not anticipate that a prompt giving explicit instructions for revisions would land so far off the mark. Claude fixed some problems but simultaneously introduced new errors (for example, adding quotations from and referencing *Gilliam v. Uni Holdings, LLC,* a case having no precedential or persuasive value to this Court. It also failed to make it through the entire list of errors identified by the law clerk's memorandum (for example, the misquotation of *Bankcard America*, the inaccurate quote attributed to *Menges v. Cliffs Drilling Co.*, and the paraphrased material presented as a direct quote from *King v. Illinois Central R.R.*).

In summary: I identified the risk that AI-generated citations might be inaccurate. I set up a verification process. The verification process identified problems. But I then used the same unreliable tool to fix those problems on the day of the filing deadline, and I did not independently verify the corrections before filing.

### III. THE SPECIFIC ERRORS

The Court is entitled to a precise accounting. I address each citation the Court identified in Section IV of its Order.

### A. Tompkins v. Cyr, 202 F.3d 770, 787 (5th Cir. 2000)

The Court correctly found that *Tompkins* contains no mention of a prior settlement or verdict, no reference to a "consequential fact" at the cited page, and that the pincited page concerns sanctions rather than evidence. The case was addressed in law clerk's review, which noted that the case exists and discussed relevance under Rule 403, but did not catch that the parenthetical quote

was paraphrased. The citation was carried forward unchanged into the filed version. Together with the *Collins* case cited along with *Tompkins,* the two cases did not deliver on the lead-in statement about court's rulings on prior settlements and verdicts.

**B. *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir. 2000)**

The Court correctly found that the opinion uses the word "purpose" rather than the quoted word "policy." My law clerk specifically identified this discrepancy in her February 3 memorandum, noting the court's actual wording. Despite this, the correction was not made in the filed version. This was an oversight during the correction process.

**C. *Gilliam v. Uni Holdings, LLC*, 201 A.D.3d 83, 88–89 (1st Dep't 2021)**

The Court correctly found that the quoted language does not appear in *Gilliam*, and that the pincite is wrong. This citation did not exist in my original draft. Unfortunately, it was introduced by the AI tool during the February 4 correction session—the very session intended to fix the citation problems the law clerk had identified. This is the most troubling error, because it demonstrates that the AI tool generated new fabricated quotations while purporting to correct existing ones, and I filed the document without verifying the new material.

**D. *Menges v. Cliffs Drilling Co.*, 2000 WL 765082, at \*3 (E.D. La. June 12, 2000)**

The Court correctly found that the quoted phrase "did not have a duty to delay his surgery" does not appear in *Menges*. My law clerk flagged this issue in her February 3 memorandum, noting that she could not find the referenced language in the opinion. The quote was not corrected before filing.

**E. *King v. Illinois Central R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)**

The Court correctly found that the quoted phrase "must have acted in 'bad faith'" does not appear as a direct quotation in *King*. My law clerk identified that the first sentence attributed to *King* actually appears in a footnote of *Rimkus Consulting Group, Inc. v. Cammarata*, and that the second sentence is a paraphrase rather than a direct quote. These corrections were not implemented before filing.

### F. *Lasha v. Olin Corp.*, 625 So. 2d 1002, 1006 (La. 1993)

The Court correctly found that *Lasha* uses the word "defendant" rather than the quoted word "tortfeasor," and that the correct pincite is 1005 rather than 1006. The AI tool generated the quote with the word substitution, and neither the law clerk review nor the correction process caught it.

## IV. WHY SANCTIONS SHOULD NOT BE IMPOSED

This Court is right not to ignore what happened. The errors are real, they are serious, and they should not have occurred. However, I respectfully submit that the circumstances warrant a disposition short of sanctions, for the following reasons.

### A. There Was No Intent to Deceive

At no point did I knowingly present fabricated quotations to this Court. I believed the citations were accurate—not because I blindly trusted the AI output, but because I took affirmative steps to verify them. Those steps were insufficient, but they were genuine. I commissioned a law clerk review. When that review identified problems, I initiated a corrective step that failed, which will not happen again. The failure was in the execution of the verification process, not in the intent behind it.

Rule 11 requires that an attorney conduct "an inquiry reasonable under the circumstances" before signing a filing. Fed. R. Civ. P. 11(b). I conducted an inquiry, which I submit was reasonable

in design but not execution. But it was not the absence of any inquiry, nor was it a deliberate attempt to mislead the Court.

### B. The Errors Did Not Affect the Court's Analysis

As reflected in the Court's thorough Memorandum Order, the Court independently researched the applicable law and resolved each motion in limine on the merits. The misquoted citations did not cause the Court to reach an incorrect result, and the legal propositions advanced in the Memorandum—while supported by inaccurate quotations—were not themselves frivolous. Most are expressions of the application of the Fed. Rule of Evid. 403 balancing test to determine relevance. I expect to lean more heavily on the simple application of Rule 403 in future motions in limine. The Court granted the motion in part, denied it in part, and deferred it in part, based on the Court's own analysis of the applicable law. It is understood that the Court's analysis was hindered and extended unnecessarily due to the miscited cases and, for reason, I apologize.

### C. Corrective Measures

I have implemented the following measures, personally, and will encourage adoption of these measures as a matter of firm policy, to prevent recurrence:

1. No AI-generated citation or quotation will be included in any filing with this Court or any other court without independent verification through Westlaw.

2. I will not use AI tools to correct AI-generated errors under deadline pressure without a subsequent independent verification step.

3. All briefs will undergo a final cite-check in which every quoted passage is compared word-for-word against the source opinion before filing, by a human with a law degree.

4. I have disclosed to my firm the circumstances that led to this Order, so that institutional safeguards can be implemented across the practice.

## V. DEFENSE COUNSEL SUBMISSION

While preparing this submission requested by the Court (ECF No.58), defense counsel filed an unsolicited submission on behalf Lowe's (ECF No.60) seeking, apparently, to broaden the Court's scope of inquiry to other cases involving other Dudley DeBosier lawyers. Since the Court did not request input from defense counsel on the matters actually before it, much less unrelated litigation, the undersigned will forego any further response to that pleading unless instructed to do so by the Court.

## VI. CONCLUSION

I fell short in my duty to ensure the accuracy of the citations and quotations in Plaintiff's Memorandum in Support. I accept responsibility for that shortcoming. I respectfully submit that the failure resulted from an inadequate verification process applied to AI-generated content, not from any misguided reliance on large language models. I ask the Court to accept this explanation and to consider the corrective measures I have implemented in determining the appropriate disposition of its Order to Show Cause.

Respectfully submitted,

/s/ W. Paul Wilkins
**W. PAUL WILKINS, La. Bar No. 19830**
DUDLEY DEBOSIER APLC
1075 Government Street
Baton Rouge, Louisiana 70802
Telephone: (225) 379-3433
Email: pwilkins@dudleydebosier.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all counsel of record via the Court's CM/ECF system this 14th day of April 2026.


    /s/ W. Paul Wilkins
**W. PAUL WILKINS**